IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CHICAGO, | ) | |
|     *ex rel.* AARON ROSENBERG, | ) | |
| | ) | |
|     **Plaintiff,** | ) | 15-cv-08271 |
| | ) | |
|     v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| REDFLEX TRAFFIC SYSTEMS, INC., | ) | |
| a Delaware corporation, and REDFLEX | ) | |
| HOLDINGS LIMITED, an Australian company, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
|     **Defendants.** | ) | |

**CITY OF CHICAGO'S POSITION STATEMENT
REGARDING DEFENDANTS' ORDINANCE INTERPRETATION ARGUMENT
<u>IN THEIR MOTION TO DISMISS RELATOR</u>**

Plaintiff, City of Chicago ("City"), by its Corporation Counsel, Stephen R. Patton, submits this Position Statement Regarding Defendants' Statutory Interpretation Argument in Their Motion to Dismiss Relator ("Statement"). Defendants answered the City's First Amended Complaint ("FAC"), but filed a Motion to Dismiss Relator ("Motion"), Aaron Rosenberg ("Relator"), under Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6), along with their Memorandum in Support ("Memorandum" or "Memo."). The third argument that Defendants raise in their Motion and Memorandum asserts an overly restrictive and incorrect interpretation of the City's False Claims Ordinance, Chicago Municipal Code ("MCC" or "Code"), Chapter 1-22 ("FCO").[1] The City, therefore, submits this Statement to make clear its position on the proper interpretation of the FCO, but otherwise takes no position on the arguments raised against the Relator in the Motion and Memorandum.

---

[1] The City's FCO was patterned after the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FFCA"), and applies to false claims submitted to the City. Because of the identical or nearly identical language in the FCO and FFCA, and as explained in more detail in the Argument, Section II, courts apply cases decided under the FFCA when interpreting the City's FCO.

**INTRODUCTION**

In their statutory interpretation argument, Defendants take the extreme position that unless an actual payment invoice contains false representations, there is no false claim sufficient to support a cause of action under the FCO. According to Defendants, if a party fraudulently induces the City to enter into a contract, by making false representations either in the contract itself or other documents required under the contract, such as the economic disclosure statements ("EDSs"), as long as the later invoices, submitted pursuant to the contract, contain no falsehoods, the City has no FCO cause of action.

In the scant two pages devoted to this argument, Memo. at 12-13, Defendants do not cite a single case to support it. In fact, Defendants' argument is directly contrary to a long line of FFCA cases, which establish, among other theories, the fraud-in-the-inducement theory, under which liability attaches for each invoice submitted to the government under a contract, when the contract itself was obtained originally through false statements or fraudulent conduct. Moreover, Defendants' superficial attempt to analyze the language of the relevant FCO provision, Section 1-22-020, which defines what kinds of fraudulent conduct constitute "false claims," is faulty, unpersuasive, and contrary to well-established case law under the FFCA. *See* Memo. at 12.

Defendants candidly acknowledge, albeit in a footnote, that their argument is contrary to FFCA case law interpreting language that is identical or nearly identical to the FCO. *See id.* at 7, 13, n. 13. They argue, however, that the "unique statutory scheme of the Chicago Municipal Code" makes the well-established FFCA law "not instructive here." *See id.* at 12, 13, n.3. According to Defendants, because the City Code has two separate causes of action, one under the FCO and another under the False *Statements* Ordinance, MCC, Chapter 1-21 ("FSO"), somehow that means that false representations in contracts and EDSs are covered by the FSO, and only

2

actual invoices that contain falsehoods are covered by the FCO. *Id*. at 12-13. Thus, Defendants reason, since the Relator cannot state an FCO claim, and since he has no standing to bring an FSO claim, that is the third basis for dismissing him. *Id.* at 13.

Contrary to Defendants' argument, there is no rule that only one statutory cause of action can apply to a particular kind of fraudulent conduct. Defendants' argument that the applicability of the FSO to their fraudulent conduct precludes a cause of action under the FCO is contrary to *two* cardinal rules of statutory construction – that courts should ascertain and give effect to the intent of the legislature, and that "[w]hen there are two acts upon the same subject, the rule is to give effect to both." *See U.S. v. Palumbo* 145 F. 3d 850, 862 (7th Cir. 1998). Thus, this Court should reject Defendants' overly restrictive and incorrect interpretation of the FCO.

## BACKGROUND AND PROCEDURAL HISTORY

Relator is a former employee of RTSI, a subsidiary of co-Defendant Redflex Holdings Limited ("RHL"). From 2003 through 2013, RTSI entered into three City contracts ("City Contracts") to provide equipment and services in connection with the City's Digital Automated Red Light Enforcement Program ("DARLEP"), commonly known as the City's "redlight camera program." Defendants' Answer to FAC ("Answer"), ¶¶1, 233. As a condition of entering into the City Contracts, each Defendant executed and submitted EDSs and other sworn statements to the City affirming, among other things, that it had not bribed or attempted to bribe any employee of the City, and that it would comply with the City's Governmental Ethics Ordinance, MCC §2-156, *et seq.*; Answer, ¶¶ 2, 3, 62, 186-187, 212, 214-215, 238-239, 241-267, 287-288, 290-291, 312-313, 315, 317-318, 320.

In 2014, Relator filed his *qui tam* complaint ("Complaint" or "Complt.") against RTSI under the City's FCO, alleging that RTSI submitted false statements to the City in order to obtain

the City Contracts. Specifically, Relator's claims were based on false statements made by RTSI to the City in EDSs submitted to secure work and payments made by the City pursuant to the City Contracts. Complt., ¶¶ 3–8. In 2015, the City intervened in Relator's case pursuant to MCC § 1-22-030(b)(2), (4), the seal was lifted, and RTSI was served with Relator's Complaint.

After removal of the case to federal court, the City filed its FAC, which adds RHL as a Defendant, re-pleads a claim under the FCO based on expanded factual allegations (Count One), and asserts additional statutory and common law claims (Counts Two - Seven). Particularly, the FAC asserts that each Defendant violated the FCO by knowingly submitting false statements to the City to secure the City Contracts, pursuant to which the City then paid Defendants $125,904,645.92. *See* FAC, ¶¶ 283–307. Count Two, pursuant to the City's FSO, seeks relief based on Defendants' submission of false EDSs and invoices in connection with the City Contracts. FAC, ¶¶ 308–332. Relator is not a party to Counts Two - Seven of the FAC.

## CITY'S POSITION STATEMENT

As explained below, this Court should reject Defendants' Rule 12(b)(6) Motion as both moot and as seeking an inappropriate advisory opinion. Should this Court consider the Rule 12(b)(6) Motion on its merits, however, it should be denied, because Defendants' narrow construction of the FCO is contrary to established case law regarding liability under the FFCA, the plain reading of the FCO and the FSO, well-established rules of statutory construction, and important governmental policy objectives.

**I.  This Court Should Reject Defendants' Rule 12(b)(6) Motion to Dismiss Relator as Both Moot and Seeking an Inappropriate Advisory Opinion.**

Regardless of how it rules on Defendants' Rule 12(b)(1) Motion, the Court should reject Defendants' Rule 12(b)(6) Motion as moot. Defendants argue that Relator's Complaint failed to

state a cause of action under the FCO. Motion at 12. Since the City has intervened in this case and filed its FAC, however, Relator's Complaint is not the operative complaint, and is a nullity, as this Court noted in open court at the last status hearing on February 18, 2016.

As to the operative complaint, the City's FAC, Defendants' statutory interpretation argument amounts to a request for an advisory opinion. Defendants have not moved to dismiss the FCO claim in the FAC, but have instead answered it, along with all of the other counts and allegations. Moreover, Defendants have not raised the defense of a failure to state an FCO claim in their affirmative defenses, and, even if they had, they have not filed any motion relating to any affirmative defenses. In fact, Defendants expressly state that their Motion "does not seek dismissal of the City's causes of action" in the FAC. Memo. at 2.

Rule 12(b)(6) motions raise defenses to claims. *See* Fed. R. Civ. P. 12(b)(6). To the extent Count One stands, it has not been adjudicated to fail to state a claim. Unless this Court is addressing the viability of Count One of the FAC as a claim, Defendants are seeking an advisory opinion. Thus, this Court should decline to address the statutory interpretation argument because it is moot as to the original complaint, and seeks an advisory opinion as to the FAC.

**II.     The Language of the City's FCO, and Cases Construing Identical or Nearly Identical Language in the FFCA, Require Denial of Defendants' Rule 12(b)(6) Motion.**

    **A**.     **The FCO Should be Construed and Applied in a Manner Consistent with Identical or Nearly Identical Language in the FFCA**.

        **1.     Federal Cases Construing the False Claims Act Roundly Reject the Argument that Defendants Raise Here.**

It is well-settled under the FFCA that fraud or false statements in contract documents which are causally related to subsequent invoices that the contractor submitted to the government for payment will support a claim under the FFCA. *See U.S. ex rel. Marcus v. Hess*, 317 U.S.

5

537, 542 (1943) (finding contractors liable under FFCA for claims submitted pursuant government contracts that had been obtained by collusive bidding). In *Hess*, the Court explained that the earlier bid-rigging fraud:

> did not spend itself with the execution of the contract. Its taint entered into every swollen estimate which was the basic cause for payment of every dollar paid by the [government] . . . [T]he initial fraudulent action and every step thereafter taken pressed ever to the ultimate goal – payment of government money to persons who had caused it to be defrauded.

317 U.S. at 543-44. It is the same in this case – the false EDSs submitted by Defendants to the City in their pursuit of the City Contracts and extensions thereof, and in the contract documents themselves, pressed ever to their ultimate goal – *i.e.*, the payment of millions of dollars in City funds pursuant to the fraudulently-obtained City Contracts.

Similarly, under FFCA language substantially identical to the City's FCO, in *U.S. ex rel. Main v. Oakland City Univ.*, 426 F.3d 914 (7th Cir. 2005), the Seventh Circuit held that allegations that a university's application to the government to participate in an education subsidy program, which did not include an immediate demand for payment of funds, but falsely stated that the university complied with federal regulations regarding student recruitment, stated a cause of action under the FFCA. The court noted that the FFCA "requires a *causal* rather than a *temporal* connection between fraud and payment." *Id.* at 916 (*citing U.S. ex rel. Lamers v. Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) (*emphasis added*)). According to the Seventh Circuit, "[i]f a false statement is integral to a causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork." *Id.*

Defendants' argument is so extreme because it runs contrary to entire theories of liability that are very well-established under the FFCA. For example, courts have long recognized a fraud-in-the-inducement theory of liability under the FFCA, starting with cases like *Hess* and

6

*Main*, which is wholly at odds with Defendants' argument. The district court in *U.S. ex rel. Wildhirt v. AARS Forever, Inc.*, 2011 WL 5373985 (N.D. Ill. 2011), summarized the FFCA requirements and how this theory fits therein. "To establish civil liability under the [FFCA], a relator generally must prove (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false." *Id.* at *1 (*citing U.S. ex rel. Yannacopoulos v. Gen. Dynamics,* 652 F.3d 818, 822 (7th Cir. 2011)). "Alleging that the defendant made a 'statement' in connection with a specific presentation to the government of a claim for payment is one way, perhaps the principal way, of pleading the first element of a *qui tam* claim." *Id.*

Another way of meeting the first element, however, is a fraud-in-the-inducement theory, "under which liability attaches 'for each claim submitted to the government under a contract, when the contract or extension of government benefit was obtained originally through false statements or fraudulent conduct.'" *Id.* at *2 (*quoting Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 787 (4th Cir. 1999) (reversing district court's ruling that FFCA liability could not rest on false statements submitted to government to gain approval for a subcontract)). "That is, even where 'the claims [for payment] that were submitted were not in and of themselves false' and 'the work contracted for was actually performed to specifications at the price agreed,' FCA liability arises 'because of the fraud surrounding the efforts to obtain the contract or benefit status.'" *Id.* *See also U.S. ex rel. Longhi v. Lithium Power Techs., Inc.,* 575 F.3d 458, 468 (5th Cir. 2009) ("Under a fraudulent inducement theory, although the Defendants' subsequent claims for payment made under the contract were not literally false, [because] they derived from the original fraudulent misrepresentation [in the grant proposals], they, too, became actionable false claims"); *U.S. ex rel. Hagood v. Sonoma Cnty. Water Agency,* 929 F.2d 1416, 1420–21 (9th Cir.

1991) (holding that "a contract based on false information is a species of false claim," and finding that an FFCA claim was properly stated where the complaint alleged that the defendant "played an active part in having presented for signature a contract that the [defendant] knew was based on false information"); *U.S. v. United Techs. Corp.,* 626 F.3d 313, 320 (6th Cir. 2011) ("False statements underlying multi-year contracts generate a stream of related invoices and cause the government to pay all of the invoices related to the contract"); *U.S. ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.,* 393 F.3d 1321, 1326 (D.C. Cir. 2005) (same); *U.S. ex rel. Hendow v. Univ. of Phoenix,* 461 F.3d 1166, 1173 (9th Cir. 2006) (same); *U.S. ex rel. Blaum v. Triad Isotopes, Inc.,* 104 F. Supp. 3d 901, 915 (N.D. Ill. 2015) (same).

> **2. The Pertinent Provisions in the FCO Are Identical or Substantially Identical to the Corresponding Sections of the FFCA, and so Should Be Interpreted the Same.**

The section of the FCO which imposes liability, Section 1-22-020, was patterned after, and was substantially identical to, the corresponding provision of the FFCA. Until 2009, the FFCA imposed liability upon any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

31 U.S.C. §3729(a)(1), (2). In 2009, the FFCA was amended[2] to impose liability on any person who:

> (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

---

[2] Amendments to the FFCA enacted in 2009 do not impact the federal cases cited herein regarding the type of conduct that creates liability under 31 USC §§3729(a)(1) and (2).

> (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

Similarly, the pertinent language in the FCO imposes liability upon any person who:

> (1) knowingly presents, or causes to be presented, to an official or employee of the city a false or fraudulent claim for payment or approval;
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the city;

MCC, §1-22-020(1), (2).

When a local enactment is modeled on a preexisting federal act, Illinois courts will presume that the enacting authority was aware of the construction given to the federal act by federal courts and give weight to federal court opinions that interpreted the federal act. *See Peo. ex rel. Levenstein v. Salafsky*, 338 Ill. App. 3d 936, 942 (2d Dist. 2003) (applying the aforesaid rule to the construction of the Illinois False Claims Act ("IFCA"), formerly known as the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/1, *et seq*.). In fact, Defendants urge this Court to apply FFCA case law in interpreting the City's FCO:

> Limited case law exists interpreting the [FCO]. Most of the Ordinance, however, is identical to the [FFCA] . . . Thus, the Court should apply case law under the [FFCA] . . . in interpreting the Ordinance's provision.

Memo. at 7 (*citing People ex rel. Schad, Diamond & Shedden, P.C. v. QVC, Inc.*, 2015 IL App. 1st 13299, ¶30).

Given that the FCO was substantially identical to the FFCA until 2009, there can be no dispute that the many pre-2009 cases, such as those cited above, apply here to foreclose Defendants' statutory interpretation argument. Moreover, the minor 2009 changes to the FFCA do not change the analysis, so post-2009 FFCA cases apply here as well. Thus, under well-established FFCA case law, Defendants face liability under the FCO for their false statements in

EDSs and other contractual documents that led to the later payment of invoices submitted under the contracts.

### 3. Defendants Acknowledge the Well-Established Interpretation of the FFCA, But Their Claim That They Are Basing Their Argument Solely on the City's Unique Statutory Scheme is Incorrect.

Defendants explicitly acknowledge – as they must – that "Federal courts have broadly interpreted the term 'claim' under the [FFCA] and apply it to false statements that later result in payment." *See* Memo. at 13, n. 13 (*citing U.S. v. Niefert-White Co.*, 390 U.S. 228, 233 (1968)). After giving this passing nod, in a footnote, to the well-established case law that buries their statutory argument, Defendants then would have this Court believe that their argument is solely based on the fact that the City has enacted two causes of action, the FCO and the FSO, and Congress has not:

> However, the interpretation of this portion of the [FFCA] is not instructive here because the City adopted the [FSO] to expressly cover statement in the EDSs and contracts and Congress has not chosen to enact an analogous statute.

*Id.* Defendants' assertion is incorrect, because they, in fact, assert statutory construction arguments that are at odds with the well-established case law and plain language of the FCO.

In support of their Motion, for example, Defendants argue that the definition of a "claim" in the FCO "*requires* that the false statement at issue [*e.g.*, a false EDS] seek payment or other property." Memo. at 12 (emphasis added). Contrary to Defendants' argument, the FCO requires that a "claim" seek payment or property (*e.g.*, an invoice), but does not require that there be an explicitly false statement in the claim itself. Under the FCO, a "claim" is defined as follows:

> "Claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made by a city contractor, grantee, or other recipient if the city is the source of any portion of the money or property which is requested or demanded, or if the city will reimburse such contractor, grantee, or

other recipient for any portion of the money or property which is requested or demanded.

MCC, §1-22-010. On its face, the foregoing definition is *not* limited to requests or demands for money or property that explicitly include a "false statement."

It is clear from the language of the FCO that conduct is actionable, even where the false statement is not in an actual invoice presented for payment, but is in some other record that is used to get the invoice paid. For example, Section 1-22-020(2) of the FCO imposes liability on a person who "knowingly makes, uses, or causes to be made or used, *a false record or statement to get a false or fraudulent claim paid* or approved." MCC, §1-22-020 (emphasis added). The plain reading of the foregoing language clearly indicates that the "false record or statement" may be separate and distinct from the "false or fraudulent claim [for payment]." *See, e.g., Lamers*, 998 F. Supp. at 986 (*citing U.S. ex rel. Fallon v. Accudyne Corp.*, 921 F. Supp. 611, 627 (W.D. Wis. 1995)). Under the FCO, a false statement and a claim *may* – but *need not* – be made simultaneously within the same document, and the FCO does not "require" that a "claim" for payment itself contain a false statement in order to be actionable. As noted above, federal cases interpreting identical or nearly identical language in the FFCA reach exactly this conclusion.

> **4. In Any Event, Defendants' Argument that the Existence of Both the FSO and the FCO Somehow Precludes Assertion of an FCO Claim Here Must Be Rejected Because the FSO Supplements, Rather Than Limits, the FCO.**

Defendants further argue that "[t]he term 'claims' in the FCO should not be expanded to include EDSs and contractual statements that do not, themselves 'request or demand' payment." Memo. at 13. In support, they point out that the FSO expressly refers to false statements in "economic disclosure statements" and "contracts," and, based thereon, they argue that a holding

11

that such documents support a cause of action under the FCO would – in their view – "subsume the False Statements Ordinance, rendering it 'superfluous or meaningless.'" *Id*.

Defendants' reliance on the statutory rule that disfavors a construction that would render any portion of a statute "superfluous or meaningless" is misplaced. The paramount rule of statutory construction – to which all other construction rules are subordinate – is to ascertain and give effect to the intent of the legislature. *Adams v. Catrambone*, 359 F.3d 858, 862 (7th Cir. 2004); *To-Am Equipment Co., Inc. v. Mitsubishi Caterpillar Forklift Amer,* 913 F. Supp. 1148, 1153 (N.D. Ill. 1995). "The first rule of statutory construction is to give words their plain meaning. 'It is well established that where the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *U.S. v. Jones*, 372 F.3d 910, 912 (7th Cir. 2004) (*quoting Lamie v. U.S. Tr.,* 540 U.S. 526, 124 S. Ct. 1023, 1030 (2004)).

Moreover, "[t]he U.S. Supreme Court provides that '[i]t is a cardinal principle of construction that . . . [w]hen there are two acts upon the same subject, the rule is to give effect to both' . . . Congressional intent behind one federal statute should not be thwarted by the application of another federal statute if it is possible to give effect to both laws." *U.S. v. Palumbo* 145 F.3d 850, 862 (7th Cir. 1998) (*quoting U.S. v. Borden Co.*, 308 U.S. 188, 198 (1939)). "[C]ourts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. 'When there are two acts upon the same subject, the rule is to give effect to both if possible . . .'" *Morton v. C.R. Mancari,* 417 U.S. 535, 551 (1974) (*quoting Borden Co.*, 308 U.S. at 198 (1939)).

Finally, in interpreting the FFCA, the U.S. Supreme Court has instructed that it "be construed broadly so as 'to reach all types of fraud without qualification, that might result in financial loss to the Government[;] . . . the Court has consistently refused to accept a rigid, restrictive reading' of the act." *U.S. ex rel. Blaum,* 104 F. Supp. 3d at 914 (*quoting Neifert-White Co.*, 390 U.S. at 232). Likewise, this Court should reject Defendants' "rigid, restrictive reading" of the FCO.

Here, the plain meaning of both ordinances make them applicable to the factual allegations of the FAC, and they are perfectly capable of co-existence. Thus, this Court should give effect to both. At all times relevant hereto, the pertinent section of the FSO stated:

> (a) Any person who knowingly makes a false statement of material fact to the city in violation of any statute, ordinance or regulation, or who knowingly makes a false statement of material fact to the city *in connection with any application, report, affidavit, oath, or attestation, including a statement of material fact made in connection with a bid, proposal, contract or economic disclosure statement or affidavit*, is liable to the city for a civil penalty of not less than $500.00 and not more than $1,000.00, plus up to three times the amount of damages which the city sustains because of the person's violation of this section. A person who violates this section shall also be liable for the city's litigation and collection costs and attorney's fees. *The penalties imposed by this section shall be in addition to any other penalty provided for in the municipal code.*

MCC, §1-21-010(a) (emphasis added). Pursuant thereto, all that is required for liability to arise under the FSO is that a person: (1) "knowingly" (2) *make* a false statement (3) of material fact (4) to the city (5) in connection with, *inter alia*, "any" application, report, affidavit, oath, or attestation, including, but not limited to, a statement of material fact in connection with a bid, proposal, contract or economic disclosure statement or affidavit. Thus, the FSO imposes liability upon those who make false statements to the City regardless of whether the false statement is made in, or "to get," a false or fraudulent claim paid or approved by the city. *Compare* MCC, §1-21-010 and §§1-22-020(a)(1), (2). In addition, the FSO specifically provides that the civil

13

penalties provided for therein are "*in addition to* any other penalty provided for in the municipal code." MCC, §1-21-010 (emphasis added).

Nothing in the FSO indicates that it was intended to limit liability under the FCO. Rather, a plain reading of the FSO indicates that it is broader than the FCO, and provides a remedy for false statements submitted to the City under circumstances that may not support liability under the FCO. Defendants proffer no reason why both ordinances cannot be enforced together. Thus, their purported justification for not recognizing and applying both here fails.

> **B.     The FCO Supports the Same Important Governmental Policies as the FFCA.**

Defendants' narrow construction of the FCO should be rejected for the additional reason that it undermines its important policy objections, including its *qui tam* provisions. Cases involving the FFCA have repeatedly acknowledged its purpose – to prevent and combat "fraud against the government." *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 669 (2008); *Cook County, Illinois v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2003) (in enacting the FFCA, Congress wrote "expansively," meaning to reach "all types of fraud, without qualification, that might result in financial loss to the government"); *ACLU v. Holder*, 673 F.3d 245, 248 (4th Cir. 2011) (the FFCA was enacted to stop the "plundering of the public treasury" by contractors).

Courts have further noted that the FFCA's policy objectives are bolstered by the inclusion therein of a *qui tam* cause of action. *See, e.g., ACLU v. Holder*, 673 F. 3d at 248 (*qui tam* provision in the FFCA provides a financial incentive for relators to protect the federal treasury from fraud); *Harrison*, 176 F.3d at 784 (the FFCA's *qui tam* provisions help the government combat fraud by unleashing a "posse of *ad hoc* deputies to uncover and prosecute frauds against the government"). It follows, therefore, that the ability to bring a *qui tam* lawsuit under the FCO is intended to encourage private persons with knowledge of fraud against the City

14

to bring such information forward by giving them a private interest in the City's recovery in the form of a bounty. *See, e.g., Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 772-73 (2000).

The FCO, like the federal FFCA, permits private persons with knowledge of fraud against the City to file a *qui tam* action on the City's behalf against the party who committed the fraud. MCC, §1-22-030(b). Given the City's choice to model the federal FFCA's *qui tam* provisions (c*ompare* 31 U.S.C. §3730 and MCC, § 1-22-030), this Court should construe it just as broadly. *See U.S. v. Sanford-Brown, Ltd.*, 788 F.3d 696, 711 n. 6 (7th Cir. 2015) (the intent behind the FFCA is to broadly protect the government's fiscal interests). Accordingly, Defendants' interpretation of the FCO also should be rejected because it is inconsistent with the public policy objectives underpinning the Ordinance.

## CONCLUSION

For the foregoing reasons, the City requests that this Court deny Defendants' Rule 12(b)(6) motion to dismiss Relator for failure to state a claim on which relief may be granted under the City's FCO.

Dated: April 4, 2016                                    Respectfully submitted,

                                            **STEPHEN R. PATTON**
                                            **Corporation Counsel, City of Chicago**

                                            By:   s/Diane M. Pezanoski

Diane M. Pezanoski (ARDC #61990003)
Fiona A. Burke (ARDC #6273779)
City of Chicago, Department of Law
30 N. LaSalle St., Suite 1400
Chicago, IL 60602
Fax: (312) 742-3832
Diane.Pezanoski@cityofchicago.org  /(312) 744-6996
Fiona.Burke@cityofchicago.org  /(312) 744-6929

## **CERTIFICATE OF SERVICE**

      I, Diane Pezanoski, an attorney, hereby certify that on this 4th day of April, 2016, I electronically filed the forgoing **City of Chicago's Position Statement Regarding Defendants' Ordinance Interpretation Argument in their Motion to Dismiss Relator** with the Clerk of the Court using the CM/ECF system, which thereby electronically served all counsel of record.

      By: \_\_\_s/Diane Pezanoski_____

Diane M. Pezanoski (ARDC #61990003)
Fiona A. Burke (ARDC #6273779)
City of Chicago, Department of Law
30 N. LaSalle St., Suite 1400
Chicago, IL 60602
Fax: (312) 742-3832
Diane.Pezanoski@cityofchicago.org  /(312) 744-6996
Fiona.Burke@cityofchicago.org  /(312) 744-6929