IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINUOIS,
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO *EX REL*. AARON ROSENBERG, <br><br> Plaintiff, <br><br> v. <br><br> REDFLEX TRAFFIC SYSTEMS, INC. and REDFLEX HOLDINGS, LTD. <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. 15-cv-8271 <br> ) <br> ) Judge John J. Tharp, Jr. <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS RELATOR**

In an effort to maintain a claim to a portion of any recovery in this action, Rosenberg's Response to Defendants' Motion to Dismiss paints himself as an altruist. Rosenberg contends he was the first person to blow the whistle on Redflex Traffic Systems, Inc. ("RTSI"), and voluntarily exposed an alleged bribery scheme involving the City of Chicago Digital Automated Red Light Enforcement Program ("DARLEP") contracts with RTSI.

Rosenberg's story is a fairy tale. Before filing his Complaint in April 2014, he never voluntarily revealed any information to the City of Chicago ("the City"). Rather, after directly participating in the alleged fraud for years and lying repeatedly to RTSI's attorneys about his and others' misconduct for years, Rosenberg finally divulged limited information about his actions during a February 4, 2013 interview with the City's Office of Inspector General ("OIG") while he was still employed by RTSI. Indeed, RTSI facilitated that interview. Prior to and during that interview, Rosenberg confirmed that he had a legal obligation to cooperate with the OIG's investigation, including by answering questions completely and truthfully.

21620795.2

The core factual allegations underlying Rosenberg's Complaint were publicly disclosed through media articles, press releases, and direct communications between representatives of RTSI and the OIG, all prior to Rosenberg filing his Complaint. Those same allegations made national and international news in 2012 and 2013, and spawned a series of more than a dozen articles in the Chicago Tribune. (Attached as Appendix.) Because the allegations in his Complaint were publicly disclosed before his Complaint was filed, Rosenberg is barred from acting as a relator in this case.

Rosenberg's Response attempts to salvage his relator status through a distortion of the law. Rosenberg wrongly suggests that additional details in his Complaint allow him to avoid the public disclosure bar even if those details relate to the same alleged fraud that was discussed in the press and disclosed to the OIG. Similarly, Rosenberg asserts that his Complaint is not "based on" the publicly disclosed information simply because he personally was involved in many of the events described in his Complaint. The Seventh Circuit and this District have repeatedly rejected those arguments, holding that a relator seeking to avoid the public disclosure bar has the burden to demonstrate that the allegations reveal a new scheme that is different from prior disclosures. Rosenberg does not even attempt to argue that the alleged bribery arrangement detailed in his Complaint is substantively different from the scheme described in RTSI's meetings with the OIG and in the press.

Additionally, Rosenberg cannot satisfy his burden to show that he qualifies as the original source of the widely reported information about RTSI. On the contrary, Rosenberg points to only the February 2013 meeting with the City where he disclosed limited information about his role in the alleged fraud. Because that meeting took place as part of an active investigation by

the OIG, as a matter of law, those disclosures were not voluntary. Accordingly, the public disclosure bar applies, and Rosenberg cannot act as a relator.

## FACTUAL BACKGROUND

### A. The October 2012 Chicago Tribune Article And Resulting OIG Investigation

On October 14, 2012, the Chicago Tribune published an exposé titled "Red Light Camera Vendor under Scrutiny." This article detailed an investigation into inappropriate and unreported expenses paid by RTSI for "lavish" trips by Deputy Commissioner Bills, as well as the potentially improper relationship between John Bills[1] and RTSI consultant Martin O'Malley. (Dkt No. 30, Ex. A to Mem in Supp. of Mot; *see also* App. at tab 3.) The Chicago Tribune noted that allegations regarding RTSI's relationship with Bills led the Mayor to order the corporation counsel to review the allegations, "and the matter was also reported to the city inspector general's office." (*Id.*)

Within less than a week, RTSI received a letter from the OIG regarding a pending investigation of RTSI and the DARLEP contracts. (Ex. 1, October 18, 2012 Letter from David Grossman to Redflex Traffic Systems.) The OIG requested thirteen categories of documents, and explained that RTSI was "obligated to cooperate with the City of Chicago's Inspector General's Office (IGO), and Chapter 2-56-090 of the Chicago Municipal Code, which obligates every 'contractor . . . to cooperate with the inspector general in every investigation . . . undertaken pursuant to this chapter.'" *(Id.)*

At the same time, RTSI initiated its own independent investigation of the topics raised by the Chicago Tribune's October 14, 2012 article in order to unravel the facts surrounding any misconduct. RTSI retained Sidley Austin LLP to conduct this independent investigation. After reviewing thousands of documents and interviewing dozens of witnesses, Sidley contacted the

---

[1] John Bills was the city employee accused of taking bribes from RTSI.

OIG to convey the results of RTSI's investigation. As discussed in the Declaration of Scott Lassar (attached as Exhibit 2), Sidley met with a representative of the OIG on January 31, 2013. During that meeting, acting on behalf of RTSI, Mr. Lassar disclosed to the OIG that RTSI had paid $2.03 million to Michael O'Malley from 2003 to 2012, and that O'Malley acted as a conduit for funds to Bills. (Ex. 2 ¶ 6.) Mr. Lassar explained that Bills had solicited the payments, claiming that he could help RTSI with the bid for the DARLEP contract. (*Id.* ¶ 5.) Mr. Lassar also disclosed that RTSI had treated Bills to a number of luxurious trips and perks. (*Id.* ¶ 4.)

Rosenberg did not meet with the OIG until February 4, 2013. Rosenberg was asked to meet with the OIG as part of the OIG's investigation of RTSI as, at the time, he was still an RTSI employee. (Dkt. No. 47, Rosenberg Resp. to Mot. to Dismiss ("Resp.") at 4.) Rosenberg admits that the OIG forwarded an advisement to him prior to the meeting, and that he read the advisement at the outset of the meeting. (*Id.*; Williams Decl., ¶ 5; Ex. 1 to Williams Decl.) The advisement explained that, under Chicago's ordinances, Rosenberg was required to cooperate with the OIG's investigation, and answer questions truthfully and completely. (*Id.*) Rosenberg then proceeded with the interview. (*Id.*)

> **B.** **The Alleged Bribery Scheme Is Disclosed In A Series Of Chicago Tribune Articles In February And March 2013.**

Over the following weeks, the allegations against RTSI made national and international news. The Chicago Tribune published a series of articles regarding the allegations against RTSI. A February 8, 2013 article detailed how RTSI "executives systematically courted former city transportation official John Bills with thousands of dollars in free trips to the Super Bowl and other sporting events" and allegedly "hid the extent of the improper relationship." (Dkt. No. 30, Ex. B to Mem.) The article further described RTSI's "hiring of a longtime Bills friend"—

4

O'Malley—"who received more than $570,000 in company commissions as a customer service representative" for RTSI. (*Id.*)

A February 22, 2013 article announced that RTSI had fired Rosenberg for unethical conduct. (App. at tab 20.) The Chicago Tribune noted that Rosenberg had been longtime friends with Bills, and that Bills had "received lavish vacations directly on the expense report of Rosenberg." (*Id.*) On March 2, 2013, the Chicago Tribune reported that "Redflex's attorneys acknowledged that it's likely true that the company officials intended to bribe a Chicago city official and plied him with expenses-paid vacations." (Dkt. No. 30, Ex. C. to Mem.; *see also* App. at tab 24.) It noted that the attorneys "found that Redflex paid $2.03 million to a Chicago consultant in a highly suspicious arrangement likely intended to funnel some of the money to the former city transportation official who oversaw the company contract." (*Id.*)

On March 4, 2013, RTSI's parent, Redflex Holdings Limited ("RHL") issued an ASX announcement[2] regarding the results of an investigation of an alleged bribery scheme. (Dkt. No. 30, Ex. E; *see also* App. at tab 26.) On the same day, the Chicago Tribune extensively cited and summarized the Australian ASX announcement, noting the results of an "internal probe." (App. at tab 25.) In an article two days later, the Chicago Tribune summarized an "international

---

[2] Rosenberg wrongly contends that the ASX announcement does not qualify as a public disclosure. (Dkt. No. 47, Resp. at 6-7.) A number of courts have considered securities filings and press releases to be "public disclosures." *United States ex rel. Kennedy v. Aventis Pharm., Inc.*, 512 F. Supp. 2d 1158 (N.D. Ill. 2007) (defendant's press releases were public disclosures); *United States ex rel. Barber v. Paychex, Inc.*, 2010 WL 2836333, at *8 (S.D. Fla. July 15, 2010) (public disclosure should be broadly construed to include the "newspaper and magazine articles, court decisions, cable news shows, securities filings, analyst reports and internet websites" referenced by defendants); *see also Carmel v. CVS Caremark Corp.*, 2015 WL 3962532, at *4 (N.D. Ill. June 26, 2015) (considering company press release and website as public disclosures). And Rosenberg misstates the holding of *United States ex rel. Yannocopoulos v. General Dynamics*, 315 F. Supp. 2d 939, 948-49 (N.D. Ill. 2004), which did not hold that all foreign disclosures do not qualify as public disclosures. The court merely held that foreign proceedings do not qualify as "hearings" or "investigations" under the FCA when the proceedings took place in Greece, in the Greek language, and were conducted under seal. *Id.* None of these factors apply to the RHL ASX announcement, which was publicly issued, in English, and was noted and summarized in a series of Tribune articles.

conference call" regarding the investigation involving RHL's interim board chairman and stockholders. (App. at tab 28.) The Tribune explained that "[t]he stockholder briefing followed company filings Monday at the Australian Securities Exchange *acknowledging that the Chicago contract with its subsidiary, Redflex Traffic Systems, Inc., was likely built on a $2 million bribery scheme involving the former Chicago official who oversaw the red light program for a decade.* This was the conclusion of a company funded internal investigation by the Chicago law firm Sidley Austin LLP." (*Id.* (emphasis added).) The Tribune continued reporting on the RTSI "scandal" throughout March 2013. (*See* App. at tabs 33, 34, 36, 37, 39, 42.)

      C.    **Dozens Of Additional Articles Regarding The Allegations Against RTSI Are Published Between April 2013 And April 2014.**

Rosenberg filed his *qui tam* complaint under seal on April 15, 2014. (*See* Dkt. No. 1, Ex. B, Compl. at 1.) In the months prior to that filing, RTSI remained a topic of conversation. For example, in January 2014, the Chicago Tribune and other news outlets published articles relating to a lawsuit filed by RTSI against Rosenberg in Arizona state court, as well as Rosenberg's counterclaim against RTSI for defamation and intentional infliction of emotional distress. (App. at tab 61.) As the Chicago Tribune detailed, Rosenberg painted himself as a scapegoat in his counterclaim. (*Id.*) Rosenberg alleged that "he was simply carrying out orders" in providing lavish perks to Bills, and that other RTSI executives had also used perks to woo clients. (*Id.*) In February 2014, the Chicago Tribune reported on a "secret meeting" in February 2003, where Bills "spent two hours coaching" RTSI employees on how to win the Chicago DARLEP contract. (App. at tab 64.) The Chicago Tribune's reporting was based on an interview with Michael Schmidt, a former RTSI software engineer. (*Id.*)

The Chicago Tribune's reporting led to substantial press coverage about RTSI's arrangement with Bills and O'Malley across the nation and the world. The articles, blogs, and other materials attached as the Appendix to this Reply demonstrate the breadth of that coverage.

## ARGUMENT

**I.  THE PUBLIC DISCLOSURE BAR REQUIRES DISMISSAL OF ROSENBERG AS THE *QUI TAM* RELATOR.**

Rosenberg does not dispute that he bears the burden of proof to establish each step of the three-part inquiry to determine whether the Court has jurisdiction to hear his claim. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009); *see also Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 904 (N.D. Ill. 2012) ("The party asserting jurisdiction bears the burden of proof."). Accordingly, Rosenberg has the burden to show that the allegations in his Complaint were not publicly disclosed before he filed his lawsuit, and that Rosenberg's allegations are not based upon public disclosures. *Glaser*, 570 F.3d at 913. If Rosenberg cannot make those showings, he bears the burden to show he qualifies as an "original source" of those disclosures. *Id.* Rosenberg cannot meet his burden on any of those factors. Thus, he must be dismissed from this action.

**A.  Rosenberg's Complaint Was "Based Upon" Information That Was Publicly Disclosed Prior To The Filing Of His Complaint.**

Rosenberg cannot credibly dispute that information regarding alleged bribery by RTSI in order to secure the DARLEP contracts was publicly disclosed prior to the filing of his Complaint in April 2014. That public disclosure took place in at least three ways: (i) dozens of articles in the local, national, and international media; (ii) press releases by RHL; and (iii) direct disclosures by RTSI to the City. Consequently, Rosenberg is forced to resort to arguments that have been repeatedly rejected by courts in this Circuit. First, he asserts that his Complaint contained certain details that were not in the public domain. (Dkt. No. 47, Resp. at 8-10.) And second, he claims

7

that his Complaint is not "based upon" the public disclosures, but rather is based on his own personal experiences. (*Id*. at 11-12.)

### 1. The Allegations Of Rosenberg's Complaint Were Previously Publicly Disclosed.

A relator cannot avoid the public disclosure bar by including additional details in his Complaint about a scheme that has already been revealed to the government or in the press. *Glaser*, 570 F.3d at 913; *United States ex rel. John v. Hastert*, 82 F. Supp. 3d 750, 764 (N.D. Ill. 2015) (taking judicial notice of news articles attached to motion to dismiss "to conclude that the information contained in [the relator's complaint] has previously been publicly disclosed and was in the public realm"); *United States ex rel. Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 2015 WL 1915493, at *5-7 (N.D. Ill. Apr. 24, 2015) (finding claims publicly disclosed, noting relator must do more than add details to publicly disclosed information); *Cause of Action v. Chicago Transit Authority*, 815 F.3d 267, 275 (7th Cir. 2016) (disclosure to government constitutes public disclosure). Rosenberg claims that he disclosed "extensive, specific and detailed allegations" in his Complaint about meetings with and payments to Bills, perks provided to Bills, and Bills' assistance to Redflex. (Dkt. No. 47, Resp. at 9-10.) Rosenberg asserts that those details were not entirely addressed in prior press reports. (*Id.*)

Courts have rejected Rosenberg's argument that additional details about meetings and particular business ventures allow a relator to avoid the public disclosure bar. In *Hastert*, the relator made a similar argument, asserting that the allegations in the relator's complaint "discusses . . . meetings and business ventures in more detail, and clearly includes more allegations." 82 F. Supp. 3d at 765. Acknowledging that the relator's complaint included additional details, the court nonetheless found that the public disclosure bar applied, noting that "a qui tam action even partly based upon publicly disclosed allegations or transactions" relates to

8

the prior disclosures. *Id.* (quoting *United States ex rel. Heath v. Wisconsin Bell, Inc.*, 760 F.3d 688, 691 (7th Cir. 2010)). Similarly, in *United States ex rel. Bogina v. Medline Industries, Inc.*, the relator argued that, even though another relator had filed a substantially similar action against the same defendant years before, his claim should proceed as it contained "critical dispositive information" concerning details of the fraud scheme and its perpetrators that had not been previously disclosed. 2015 WL 1396190, at *10 (N.D. Ill. Mar. 24, 2015), *aff'd*, 809 F.3d 365 (7th Cir. 2016). The court rejected this argument, pointing out that the Seventh Circuit has repeatedly observed that a private suit may not overcome the public disclosure bar "***even if the private relator adds details***." *Id.* at *11 (emphasis in the original) (quoting *United States ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 934 (7th Cir. 2012)).

In any event, the allegations of Rosenberg's Complaint were publicly disclosed because that information was publicly disclosed before the Complaint was filed. For example, Rosenberg suggests that information about meetings between Bills and RTSI prior to the bidding for the DARLEP contract was not previously publicly disclosed. (Dkt. No. 47, Resp. at 9, discussing "Unlawful Pre-Bid Assistance"; Resp. at 13, discussing "pre-bid meeting.") On February 21, 2014, however, the Chicago Tribune published an article titled "Ex-Redflex manager tells of secret meeting before firm got city business." (App. at tab 64.) The Chicago Tribune explained that Michael Schmidt, an RTSI software engineer, claimed that Bills "spent two hours coaching us on how to win the contract" at a February 2003 meeting. (*Id.*)

Additionally, RTSI disclosed substantial information about Bills and O'Malley's involvement with the DARLEP contract directly to the City long before Rosenberg filed his Complaint in April 2014. (Ex. 2, Lassar Decl.) The Seventh Circuit has held that "the Government's possession of the information exposing a fraud is alone sufficient to trigger the

9

public-disclosure bar." *Chicago Transit Authority*, 815 F.3d at 275. As discussed in the Lassar Declaration, RTSI provided extensive information to the OIG during a January 31, 2013 meeting, five days before Rosenberg's meeting on February 4, 2013. (Ex. 2, Lassar Decl. ¶ 3.) For example, RTSI disclosed particularized and detailed information about the meetings with Bills in February 2003, the amounts paid to Bills through O'Malley, and trips and other perks given to Bills. (*Id*. ¶¶ 4-6.) Additionally, Mr. Lassar explained that RTSI may have used Network Electric and Jimmy Johnson as a conduit for payments to Bills. (*Id*.) Accordingly, the allegations of Rosenberg's Complaint, filed more than a year after Mr. Lassar's meeting with the OIG, had long been publicly disclosed through the press and direct disclosures to the OIG.

### 2. Rosenberg's Complaint Is Based Upon The Publicly Disclosed Allegations.

A "relator's complaint is 'based upon' publicly disclosed allegations or transactions when the allegations in the relator's complaint are substantially similar to allegations already in the public domain." *Glaser*, 570 F.3d at 910. Rosenberg's Response asserts that because the information in Rosenberg's Complaint "came from Rosenberg, not the Tribune articles… the public disclosure bar does not apply." Rosenberg misstates the law – it is irrelevant whether Rosenberg's allegations are based on his own personal experiences.

*Hastert* is directly on point. The court rejected the relator's argument that the allegations of his amended complaint were not "'based upon' anything that was disclosed by the Tribune or anywhere else other than from [the relator's] own experiences and observations." 82 F. Supp. 3d at 764-65. The court compared the allegations of that complaint to articles published in the Chicago Tribune, and found that the public disclosure bar applied. *Id.* at 765, 767.

Rosenberg relies heavily on *Leveski v. ITT Educ. Servs., Inc.,* 719 F.3d 818 (7th Cir. 2013), arguing that the decision shows that *qui tam* relators that "used inside information . . .

10

obtained during . . . decade-long employment" with a defendant are not subject to the public disclosure bar. (Dkt. No. 47, Resp. at 14-15.) Rosenberg misreads *Leveski,* which did not hold that the relator's complaint was not "based upon" prior disclosures simply because the relator had used inside information. On the contrary, the court in *Leveski* found that the relator's allegations were not based upon prior public disclosures because they included information about new schemes that could be actionable. 719 F.3d at 833. The court explained that the relator "had alleged new tactics by ITT to avoid the mandates of the HEA—tactics that extend beyond the recruiting office (the focus of *Graves*) to the financial aid office."[3] *Id.*

In contrast, Rosenberg does not even attempt to demonstrate that his Complaint disclosed new tactics or a fraud by RTSI that differs from the allegations made in prior public disclosures. On the contrary, the Chicago Tribune articles and RHL's press releases disclosed the arrangement with Bills and O'Malley, and concluded that "the authorities may consider [the arrangement] . . . to be bribery." (Dkt. No. 30, Mem. Ex. C.) As in *Glaser*, the public disclosures and the allegations of Rosenberg's Complaint "pertain to the same entity and describe the same fraudulent conduct . . . ." 570 F.3d at 910. Because "'based upon' does not mean 'solely based upon,'" Rosenberg's Complaint is subject to the public disclosure bar. *Id.*

### B. Rosenberg Is Not An "Original Source" Because He Made No Prior Voluntary Disclosure To The City.

Rosenberg cannot qualify as an "original source" because he did not voluntarily provide information to the City prior to filing his Complaint. Through an affidavit of Rosenberg's

---

[3] Similarly, Rosenberg's reliance on *Wisconsin Bell, Inc.*, 760 F.3d at 692, is misplaced. There, the relator identified a fraud through a comparison of pricing received by a number of school districts. Previously disclosed information did not reveal even a hint of fraud – the disclosures only showed that a contract "with a lower rate than that which was being offered existed." *Id.*; *see also Goldberg*, 680 F.3d at 936 (prior disclosures did not describe new "kind of deceit").

11

attorney,[4] Rosenberg argues that he "voluntarily" submitted to an interview with the OIG on February 4, 2013. (Dkt. No. 47, Resp. at 17, citing Decl. of Michael Williams.) That is simply untrue. As Rosenberg admitted at the time, he was employed by RTSI and under a legal obligation to cooperate with the OIG. Thus, legally, his disclosures were not voluntary. *United States ex rel. Stone v. AmWest Sav. Ass'n*, 999 F. Supp. 852, 857 (N.D. Tex. 1997) ("The relator must prove that his disclosure was made 'of [his] own free will without valuable consideration . . . [or] without any present legal obligation . . . or any such obligation that can accrue from the existing state of affairs.'" (citation omitted)). He admits in his Response that he was employed by RTSI until February 20, 2013. (Resp. at 4.) He further admits that an RTSI attorney attended his interview with the OIG, and thus RTSI had been aware of and involved in the planning for that meeting. (*Id*. at 3.) That interview took place in the context of the OIG investigation of RTSI – not because Rosenberg, of his own volition, offered to assist the City.

As a current employee of a City contractor, Rosenberg was obligated to cooperate with an OIG investigation. Chicago Municipal Ord. 2-56-090. The OIG advised Rosenberg of that duty through an advisement given to Rosenberg before and during his February 4, 2013 interview. (Dkt. No. 47, Williams Decl. ¶ 1.) By proceeding after that advisement, Rosenberg agreed that he had a "duty to cooperate with the Inspector General's Office, which includes answering all questions completely and truthfully." (*Id*.) Rosenberg also confirmed that he

---

[4] In his Declaration, Mr. Williams states that he is "counsel of record for Relator Aaron Rosenberg" in this action. (Dkt. No. 47, Resp., Williams Decl. ¶ 1.) Mr. Williams has not filed an appearance in this action. If Mr. Williams is currently acting as Rosenberg's attorney, however, his Declaration raises questions about his ability to act as an attorney and fact witness in this action. Moreover, if Mr. Williams has a contingent fee agreement with Rosenberg, his Declaration raises even more questions. *First Nat'l Bank of Springfield v. Malpractice Research, Inc.*, 179 Ill. 2d 353, 363 (Ill. 1997) (noting rules and opinions that preclude the payment of "of a contingent fee directly to a witness"). To the extent that the Court deems it necessary to reach the issue of whether Rosenberg's February 4, 2013 meeting with the OIG involved the disclosure of information that later formed the basis for Rosenberg's Complaint, RTSI requests leave to initiate discovery relating to those issues from Rosenberg and Mr. Williams.

understood that a "refusal to answer any questions or any false, inaccurate or deliberately incomplete statement by [Rosenberg] would constitute a violation of Chicago Municipal Ordinance 2-56." (*Id.*) Rosenberg cannot now disclaim those affirmations, and claim that his statements to the OIG were purely voluntary. (Dkt. No. 47, Resp. at 17.)

Statements made during a pending government investigation are not voluntary, and therefore cannot be used by a relator to qualify as an "original source." *U.S. ex rel. Barth v. Ridgedale Elec., Inc.*, 44 F.3d 699, 704 (8th Cir. 1995). In *Barth*, the court rejected a relator's claim to be an original source when the relator's contacts with a HUD investigator were initiated by HUD. The court noted that the relator "had been aware of Ridgedale's possible fraud against the government for some time [but] he remained silent until the government itself heard of the fraud and began its own investigation. In this sense, [the relator] did not 'voluntarily' bring the information to the government and now rewarding him for merely complying with the government's investigation is outside the intent of the Act." *Id.*

Rosenberg does not even attempt to distinguish the *Barth* decision. Just as the relator in *Barth* withheld information about potential fraud against the government until an investigation was underway, Rosenberg waited for almost a decade to reveal information about the alleged bribery scheme to the government. When he finally disclosed certain information about what he knew, he did so in an interview in connection with an already pending investigation. As the court held in *Barth*, a relator should not be rewarded for merely complying with the government's investigation. *Id*.

Rosenberg clearly has not met his burden to establish that he qualifies as an original source. Accordingly, the Court should dismiss Rosenberg from this action.

## II. THE GOVERNMENT'S INTERVENTION DOES NOT ALLOW ROSENBERG TO AVOID THE PUBLIC DISCLOSURE BAR.

Rosenberg wrongly questions whether the government's intervention in this case obviates his requirement to show that the public disclosure bar does not apply here. (Dkt. No. 47, Resp. at 5-6.) Rosenberg cites no authority supporting his implied assertion that government's involvement removes the issue of the Court's jurisdiction over Rosenberg. The Supreme Court held in *Rockwell Int'l Corp. v. United States* that intervention by the government does not cure jurisdictional deficiencies as to the relator. 549 U.S. 457, 476-78 (2007). Rosenberg simply ignores that holding, and attempts to distinguish the case by suggesting that the procedural posture of this case is different, but does not explain why those differences undercut the Court's ruling. (Dkt. No. 47, Resp. at 5-6.)

The law is clear: "[t]he public disclosure bar applies even after the government intervenes in a case. If the court lacks jurisdiction as to the realtor due to the public disclosure bar, the relator must be dismissed." *United States ex rel. Ward v. Peck*, 2013 WL 4511634, at *3 (E.D.N.C. Aug. 23, 2013) (citing *Rockwell*); *see also United States ex rel. Lisitza v. Johnson & Johnson*, 765 F. Supp. 2d 112, 120 (D. Mass. 2011) ("Where a relator fails to qualify as an 'original source,' government intervention does not cure the jurisdictional defect.") (citing *Rockwell*). Because Rosenberg's allegations were publicly disclosed, and he is not an original source, the government's intervention does not allow him to continue as relator.

## III. ROSENBERG FAILS TO STATE A CLAIM UNDER THE FALSE CLAIMS ORDINANCE.

Rosenberg and the City do not contest that the premise of Rosenberg's Complaint is that RTSI submitted allegedly false statements to the City in EDS's and contracts. (Dkt. No. 1, Ex. B, Compl., ¶¶ 151-152, 154-156.) And Rosenberg and the City concede, as they must, that the Chicago False Statements Ordinance ("FSO") permits the City to pursue claims relating to false

14

"statement[s] of material fact made in connection with a bid, proposal, *contract* or *economic disclosure statement* or affidavit." Chicago Municipal Code § 1-21-010 (emphasis added).

Rosenberg and the City cannot explain, however, why their claims are properly brought under the False Claims Ordinance ("FCO"), when that ordinance does not refer to contracts or economic disclosure statements. Rather, Rosenberg and the City claim that the FSO and FCO are "two acts upon the same subject." (Dkt. No. 47, Resp. at 18; Dkt. No. 42, City Pos. Stmt. at 3 *quoting U.S. v. Palumbo*, 145 F.3d 850, 862 (7th Cir. 1998).) The plain language of the two ordinances, however, reveals that the FSO and FCO do not cover the same subject. The City enacted both ordinances at the same time and by including references to contracts and EDS's in the FSO, but not the FCO, demonstrated the intent to restrict claims relating to statements in those documents to the FSO. As the City asserts, the "paramount rule of statutory construction – to which all other construction rules are subordinate – is to ascertain and give effect to the intent of the legislature." (City Pos. Stmt. at 12.) The Court should apply that rule here, and dismiss Rosenberg as a relator because the allegations in this action relate to a claim under the FSO, which does not permit a relator to file a claim on the City's behalf.

## CONCLUSION

Wherefore, for the foregoing reasons, Rosenberg should be dismissed as the relator in this lawsuit pursuant to Federal Rules of Procedure 12(b)(1) and (6).

Dated: May 16, 2016                     Respectfully submitted,

                                        /s/William B. Berndt
                                        Attorney for Redflex Traffic Systems, Inc. and
                                        Redflex Holdings, Ltd.

Steven A. Weiss
William B. Berndt
Honigman Miller Schwartz and Cohn LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
312.701.9300

## CERTIFICATE OF SERVICE

I, William B. Berndt, an attorney, hereby certify that on this 16th day of May, 2016, I electronically filed the foregoing **Defendants' Reply Brief in Support of Their Motion to Dismiss Relator** with the Clerk of the Court using the CM/ECF system, which thereby electronically served all counsel of record.

                                                   */s/*William B. Berndt  
                                                   William B. Berndt