UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO,  ) | |
| ex rel. AARON ROSENBERG  ) | |
| ) | No. 15-cv-8271 |
| v.  ) | Judge John J. Tharp |
| ) | |
| REDFLEX TRAFFIC SYSTEMS, INC., *et alia*  ) | |

**AARON ROSENBERG'S MOTION FOR
(I) PAYMENT OF SHARE OF SETTLEMENT PROCEEDS;
(II) PAYMENT OF ATTORNEYS' FEES AND COSTS; OR,
ALTERNATIVELY,
(III)  PAYMENT OF *QUANTUM MERUIT* ATTORNEYS' FEES AND COSTS**

Aaron Rosenberg by his attorneys, Muldoon & Muldoon, LLC, hereby moves for: (i) payment of his share of settlement proceeds under the Chicago False Claims Ordinance ("FCO"), (ii) payment of attorneys' fees and costs under the FCO, or, alternatively, (iii) payment of *quantum meruit* attorneys' fees and costs. And in support states:

### I. Preliminary Statement

Once a case is successfully resolved, the Chicago False Claims Ordinance ("FCO") provides that: 1) the person who brings the action is entitled to 15% to 25% of the recovery if the lawsuit was based primarily on specific information from that person (hereinafter referred to as "Level 1 Recovery"); 2) if the suit was not primarily based on the information from the person who brought the action, then that person is entitled to up to 10% of the recovery based on the significance of the information he provided and his role in advancing the case to litigation (hereinafter referred to as

1

"Level 2 Recovery"); and 3) fees and costs to counsel for such a person.

Mr. Rosenberg is entitled to a percentage of the recovery under at least one of the first two bases above. It cannot be disputed that Mr. Rosenberg provided significant specific information and that he advanced the litigation.

Mindful of this Court's earlier ruling Mr. Rosenberg will not re-argue that the information he provided was the primary basis for the action and that, accordingly, Rosenberg is entitled to Level 1 Recovery. This Court's prior ruling would appear to preclude a finding that he "substantially contributed" to the prosecution. To preserve his right to appeal this issue, however, Mr. Rosenberg does assert that the instant lawsuit is primarily based on the specific and substantial information he provided, and that he is therefore entitled to an award of 15-25% of the recovery. Of course, should this court want further briefing on the issue of his substantial contribution, Mr. Rosenberg will provide that upon request.

But even with the Court's finding that Mr. Rosenberg's Complaint was based on publicly disclosed information, Mr. Rosenberg is entitled to up to 10% of the recovery. The FCO mandates payment in that range for a person who brings the lawsuit and assists in the prosecution of the case; even if that person's information is not the primary basis on which the lawsuit was conducted. As set forth below Mr. Rosenberg unquestionably brought the lawsuit and provided information that advanced the litigation and, therefore, is entitled to Level 2 Recovery

Additionally, Mr. Rosenberg seeks payment of attorneys' fees and costs under the FCO for the substantial work performed by his counsel in preparing and bringing

2

this action, and the material assistance Mr. Rosenberg's counsel provided the City of Chicago ("City") after the complaint was filed.

Finally, even if the Court does not award attorneys' fees and costs under the FCO, counsel for Mr. Rosenberg are entitled to *quantum meruit* for their time and assistance to the City in this matter. These fees are payable irrespective of the Court's findings with respect to Mr. Rosenberg's entitlement to a share of the recovery because it is undisputed that Mr. Rosenberg's counsel devoted substantial time and resources to assisting the City in pursuing this case and ultimately obtaining a $20 million settlement.

## II. Mr. Rosenberg is entitled to a percentage of the City's recovery pursuant to the FCO.

If the City proceeds with a *qui tam* action and obtains a settlement or judgment, section 1-22-030(d)(1) of the FCO provides two ways that the person who brought the action is entitled to a share of the settlement proceeds:

> 1. If the city proceeds with an action **brought by a person** under this section, such person shall, subject to the second sentence of this paragraph, receive at least 15% but not more than 25% of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action; and
>
> 2. Where the action is one which the court finds to be based primarily on disclosures of specific information (***other than***

3

> *information provided by the person bringing the action*)
> relating to allegations or transactions in a criminal, civil, or administrative hearing, in a legislative, administrative, or Inspector General's report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10% of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation.

(Emphasis Added) MCC § 1-22-030(d)(1).

Thus, the FCO states that the person who brought the action is entitled to Level 1 Recovery between 15% to 25% of settlement proceeds if the person has substantially contributed to the prosecution of the action. As noted above, the Court's prior order seems to preclude this discovery. Mr. Rosenberg disagrees with this conclusion, contending that he did provide substantial contribution and is entitled to Level 1 Recovery. However, given the Court's earlier Order, Mr. Rosenberg will not re-argue that he was the substantial contributor to the action, and simply preserves the issue for appeal.

Nevertheless, a person bringing the action who has not "substantially contributed" is *still* entitled to up to 10% of the settlement proceeds under the FCO. *See Alderson v. United States*, 718 F. Supp. 2d 1186 (C.D. Cal. 2010). The *Alderson* court provided an overview of compensation for the person bringing an FCA case.

In doing so, it stated that "in addition to the relator's recovery based on his services, the False Claims act - like all *qui tam* actions - 'allow [s] informers to obtain a portion of the penalty as a bounty for their information.'" *Alderson* 718 F. Supp. 2d at 1190 (quoting *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 775 (2000)).

Recognizing the different levels of recovery to the relator based on the information and services provided to the government, the *Alderson* court noted that such a person is entitled to compensation even if the Court finds that the complaint was based on information *other* than that provided by the person bringing the action. *Alderson*, 718 F. Supp. 2d at 1190. The *Alderson* court further stated "it is helpful to focus on the language of the statute, which plainly establishes that the award is a payment in exchange for the relator's information and services." *Id*.

Under the FCO, the Court is to consider the significance of the information provided by that person and his role in advancing the case in determining what share between zero and 10% that person should receive. Mr. Rosenberg provided extensive information, had a major role in advancing the case and, consequently, should receive Level 2 Recovery at the high end of the spectrum.

From at least June 2015 through August 2016 Relator and Relator's Counsel worked hand in hand with the City's attorneys in the advancing this case. On August 25, 2015, shortly after intervening in this action, the City proposed that the Relator's attorneys enter into a Common Interest Agreement (the "Agreement"). (*See* Exhibit 1.) The parties to the Agreement were the City and Aaron Rosenberg

5

("'Relator"), by his attorneys, John J. Muldoon III of Muldoon & Muldoon, and Thomas H. Bienert, Jr. of Bienert, Miller & Katzman ("Relator's Counsel") (collectively "the Agreement Parties").

The Agreement set forth that the "Agreement Parties share interests in seeking recovery for damages to the City, and the ***City wishes to have Relator's and Relator's Counsel's assistance in the investigation and litigation of the Action***." Ex. 1 (emphasis added). The Agreement Parties further agreed "that they [would] jointly prosecute the Action." *Id.* Based on this agreement and in furtherance of their commitment to the City, Mr. Rosenberg and his counsel met with the City several times and provided it relevant documents and assistance, among other things, prior to the City's filing the First Amended Complaint ("FAC"). (See Declaration of Thomas H. Bienert, Jr. attached hereto as Exhibit 2)

Relator's Counsel drafted major provisions of the FAC. (See Declaration of John J. Muldoon, III attached hereto as Exhibit 3) In fact, the City's FAC reiterated almost all the allegations of Rosenberg's original complaint; information of which came almost exclusively from Rosenberg and his counsel. Relator's Counsel also supplied information for the City's Rule 26 Disclosures and discovery requests as well as other documents and submissions. (See Ex. 3)

Rosenberg and his counsel continued assisting the City after the filing of the First Amended Complaint, providing information and assistance on all aspects of the ongoing litigation including reviewing documents drafted by the

6

City and suggesting edits to them. Most of this assistance was in response to direct requests from the City. (See Ex. 3) Thus, the City clearly requested and received Mr. Rosenberg's knowledge and his counsel's assistance in advancing the case.

The agreement with the City only confirms the nature of the relationship between the parties in a *qui tam* action. The FCO, like the federal False Claims Act, "'operate[s] as an enforceable unilateral contract' which is 'accepted by the relator upon filing suit.'" *Alderson*, 718 F. Supp. at 1190 (quoting *United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 748 (9th Cir.1993)). In support of this contractual relationship, in the FAC's prayer for relief the City requested "a finding that under the FCO, Relator Aaron Rosenberg, is entitled to a percentage of the total judgment entered in favor of the City on Count One of the Complaint, and reasonable expenses and attorneys' fees." Dkt. No. 25 at p.39.

Tellingly, when the Court unexpectedly dismissed Mr. Rosenberg, the City immediately hired outside counsel to assist it, namely, the firm of Kulwin, Masciopinto & Kulwin, LLP. (Compare Dkt. No. 63. August 8, 2016 Memorandum Opinion and Order dismissing Mr. Rosenberg from this action with Dkt. Nos. 66-69 Notices of Appearances for Kulwin, Masciopinto & Kulwin, LLP attorneys). The City sought other counsel to fill the role of assisting it that was being performed by Relator's Counsel.

No one questions that Mr. Rosenberg and his counsel significantly advanced the litigation for the City. Mr. Rosenberg falls within the plain language of section

MCC § 1-22-030(d)(1)'s second sentence and should receive Level 2 Recovery of at least 10% of settlement proceeds based on (i) the substantial work he put into this case prior to filing the complaint and (ii) the material assistance he provided the City after filing the complaint and before he was dismissed.

### III. The Court should award Mr. Rosenberg's attorneys' fees and costs, pursuant to the FCO.

Section 1-22-030(d)(3) of the FCO provides, in relevant part, that a ***"[a]ny person entitled to an award under*** [§ 1-22-030(d)(1) and (d)(2)], ***shall*** also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." Again, the FCO conditions payment on the "person" who brought the action, not whether that person is a "party" to the action. Given that Mr. Rosenberg falls within Level 2 Recovery, requiring the Court to determine the appropriate share to him "up to 10%;" the FCO mandates an award of reasonable attorneys' fees and costs.

In determining reasonableness, courts in the Seventh Circuit apply the lodestar method, which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). Under the lodestar method, the district court has the flexibility to adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation. *Id.* The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case. *Id.* The party seeking an award of fees

8

should submit evidence supporting the hours worked and rates claimed, including with billing time records. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 437 (1983).

Accompanying this motion are declarations from the primary attorneys who worked on this matter (See Exhibits 2 and 3 attached hereto.) Attached to Mr. Bienert's and Mr. Muldoon's declarations are their firms' invoices with time entries setting forth the necessary and reasonable time spent on this action.

The hourly rates reflected in the invoices represent rates that are consistent with, and arguably below, the billing rates of comparably experienced members of the legal community with respect to this type of litigation, and reasonable considering the work required on this case. The reasonable fees incurred for defense of this action are $321,534.28 and the costs are $9,870.75.

These amounts reflect only the hours that the Firms believe were reasonably necessary to achieve Mr. Rosenberg's goals, and, specifically, to prosecute claims against Redflex related to the company's illegal bribery scheme to procure lucrative government contracts. The work performed on this matter was reasonable and necessary for this type of case, as set forth in the accompanying declarations of Thomas Bienert and John Muldoon, and the invoices to be filed Under Seal as part of this Motion.

**IV.     Alternatively, the Court should award Mr. Rosenberg's attorneys' fees and costs under the *quantum meruit* approach.**

In *Rohter v. Passarella,* the Illinois Court of Appeals delineated the nature of quantum meruit:

9

> "The literal translation of *quantum meruit* is as much as he deserves. The common law adopted the term to describe a cause of action which seeks to recover the reasonable value of services which have been nongratuitously rendered, but where no contract exists to prescribe exactly how much the renderer should have been paid. In the absence of an enforceable agreement, the law will find that the recipient of the services implicitly promised to compensate their provider for the benefit received. Otherwise, absent this implied agreement, the beneficiary would be unjustly enriched by his ability to retain an unintended largess…accordingly, 'the measure of recovery is the reasonable value of plaintiff's service."

246 Ill. App. 3d 860, 866 (1st Dist. 1993) (citations omitted).

As stated above, from at least June 2015 through August 2016 Relator's Counsel worked hand in hand with the City's attorneys in the prosecution of this case. Pursuant to the Common Interest Agreement (Exhibit 1 referenced above), Relator's Counsel conducted face-to-face meetings, reviewed and edited motions and submissions, participated in teleconferences, and communicated through hundreds of emails in pursuit of the litigation of this matter. (See Ex. 3)

In fact, the relator himself traveled from California to Chicago twice, once with Mr. Bienert and once alone. He met for hours with the City identifying key documents and explaining Redflex's corrupt system in painstaking detail. In total, Relator's Counsel expended 541 hours in joint prosecution of this action with the City and paid $9,870.75 in out of pocket expenses.

The City welcomed the services of the Relator and Relator's Counsel, and benefited substantially from those services. The City contemplated that Relator's Counsel would be compensated for their services.

If Relator's Counsel are not compensated for their services, the City will be "unjustly enriched by [its] ability to retain an unintended largess." *Rohter* Ill. App. 3d at 866. Therefore, Relator's Counsel is entitled to the fair measure of their services as *quantum meruit*.

## V. Conclusion.

For the reasons stated above, the Court should award Mr. Rosenberg Level 1 Recovery between 15 and 25% of the settlement proceeds, and in no event less than 10% for Level 2 Recovery Likewise, the Court should award attorneys' fees of $321,534.28 and costs are $9,870.75 for a total award of $331,405.03.

Respectfully submitted,

/s/ John J. Muldoon, III
Muldoon & Muldoon, LLC
Attorneys for Aaron Rosenberg

John J. Muldoon, III
Muldoon & Muldoon, LLC
Illinois Attorney No. 6185878
30 N. LaSalle Street, Suite 2950
Chicago, IL 60602
312-739-3550
jjm@muldoonlaw.com