IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO *ex rel.* AARON ROSENBERG, ) ) ) Plaintiff, ) ) v. ) ) REDFLEX TRAFFIC SYSTEMS, INC. ) AND REDFLEX HOLDINGS, LTD., ) ) Defendants. ) | No. 15 C 08271 Judge John J. Tharp, Jr. |

## ORDER

For reasons explained in the Statement below, this Court denies the motion [86] of Aaron Rosenberg and his attorneys for (i) payment of a share of the settlement proceeds; and (ii) for attorneys' fees and costs under the statute or a *quantum meruit* theory. This case remains closed.

## STATEMENT

Aaron Rosenberg filed this civil action on behalf of the City of Chicago under its False Claims Ordinance ("FCO"), Chicago Mun. Code ch. 1-22. Rosenberg, a corrupt former executive of Redflex Traffic Systems, Inc. ("RTSI") from 2002 to February 2013 alleged that RTSI violated the FCO by using bribery to obtain contracts with the City to provide and maintain its digital automated red-light camera enforcement program. The City intervened and filed an amended complaint against RTSI and its parent company, Redflex Holdings, Inc. ("RHI") (collectively, "Redflex"). Granting Redflex's motion, this Court dismissed Rosenberg from the suit because the allegations in his complaint were based upon publicly disclosed information and he does not qualify as an original source of those allegations. *See* Mem. Op., ECF No. 63. The City and Redflex have since settled this matter and dismissed the lawsuit voluntarily, over Rosenberg's objections. *See* Agreed Mot., ECF. No. 78; Relator Objections, ECF No. 82; Order, ECF No. 85.

Rosenberg now moves to share in a portion of the settlement proceeds and for an award of attorneys' fees for his lawyer's contributions to the case. The City and Redflex each oppose the motion.[1]

---

[1] The Court is addressing this non-emergency motion on an expedited basis in deference to the Court of Appeals, which deems the resolution of this motion relevant to its consideration of Appeal No. 17-1524, in which Rosenberg challenges his dismissal as relator.

### A. Settlement Proceeds

Before this motion was filed, at a hearing on Rosenberg's objections to the settlement, the Court had already expressed it skepticism that Rosenberg could share in any portion of the proceeds. Feb. 9 Tr. 3, 5-6, ECF No. 100. Based upon the holding of *Rockwell International Corporation, et al. v. United States*, 549 U.S. 456 (2007), that the public-disclosure bar of the federal False Claims Act (identical in all material respects to the FCO) is a matter of the court's subject-matter jurisdiction, this Court explained that because of its ruling on the public-disclosure bar: "Mr. Rosenberg's participation in the case prior to that ruling is a nullity. It is void *ab initio*. It has no effect. He is no longer and effectively was never authorized to bring the case. The Court never had jurisdiction." Tr. 3. Thus Rosenberg "has no claim on any settlement proceeds or damages that might ultimately be awarded in this case." *Id*. 5. Nevertheless, the Court permitted the filing of the current motion because Rosenberg's attorneys orally advanced an argument that *Rockwell* did not foreclose the relator's argument because it spoke about proceeds due to a "party," which Rosenberg is not, as opposed to a "person bringing the action" under the statute, which Rosenberg contends that he is. Despite Rosenberg's linguistic gymnastics, however, the Court remains unpersuaded after reviewing the argument in writing.

The Court first notes that Rosenberg's motion, which was filed after the hearing on February 9, does not address the principal concern the Court identified during that hearing—namely, that it lacks jurisdiction to do anything with respect to Rosenberg, including to award proceeds and fees. The failure to address the jurisdictional issue in the motion—which this Court permitted for the very purpose of letting Rosenberg set forth his theories of relief—is a forfeiture of any argument that such jurisdiction exists. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 783 (7th Cir. 2013) (arguments not raised in the district court are waived). Objections to the exercise of subject matter jurisdiction, of course, cannot be forfeited, but "the *proponent* of subject matter jurisdiction, as with any party with the burden on a particular point, may forfeit an argument that could have been made to *support* jurisdiction. *Bgc Partners, Inc. v. Avison Young (Canada) Inc.*, No. 15 C 3017, 2015 WL 7251954, at *4 (N.D. Ill. Nov. 17, 2015).

If Rosenberg wishes to stand on his cursory remarks at the February 9 hearing, that is a poor decision. Then, Rosenberg appealed to this Court not to bar him from recovery based on the absence of jurisdiction, urging that *Rockwell* does not apply because he is not acting as a "party" seeking a share of the proceeds, only a "person" who initiated the lawsuit. Feb. 9 Tr. 4, ECF No. 100. But both the FCA and the FCO speak of the relator as "the person bringing the action," not a "party." For example, the public-disclosure bar and original-source exception refer to "the person bringing the action," as does the statutory section providing that the "person bringing the action" (a.k.a., the relator) can receive proceeds. And the *Rockwell* Court squarely decided the construction of that very statute, so any argument that it does not apply here is not well-taken. Of course, a relator (who in any false-claims *qui tam* case is the person "bringing the action") is, necessarily, a "party" in the case at filing. For purposes of the jurisdictional bar, this doesn't matter. Once dismissed, he remains a "person," but he is no longer the "person bringing the action," nor the relator, nor a party—effectively, he never was, because jurisdiction was never vested. This is the point of *Rockwell*. "The elimination of [the relator] leaves in place an action pursued only by the Attorney General, that can reasonably be regarded as being 'brought' by him." 549 U.S. at 478.

The consequence is that the ex-relator whose claim is jurisdictionally barred cannot receive any share of the proceeds attributable to that claim. *United States ex rel. Newell v. City of St. Paul*, 728 F.3d 781, 799 (8th Cir. 2013); *see also United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634 (6th Cir. 2003) (relator possibly entitled to share in settlement proceeds if amended complaint survived Rule 9(b) *and* the district court "is satisfied that it has subject matter jurisdiction over the FCA claims"). Rosenberg offers no way around this jurisdictional impediment to his claim, and the Court will not belabor further the points it made on the record on February 9.

Rosenberg's statutory argument is also unpersuasive. The FCO, Title One, Chapter 22, Section 30(d)(1) states:

> If the city proceeds with **an action brought by a person under this section**,[2] such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a legislative, administrative, or inspector general's report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than ten percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation.

Rosenberg preserves for appeal, but does not belabor, his argument that the first sentence applies to him. Instead he seeks a "Level 2" recovery of ten percent, pursuant to the second sentence. That sentence mirrors the pre-2010 FCA (parsed in *Rockwell*), which provides that, "if the Government proceeds with an action brought by a person under subsection (b):[3]

> Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the

---

[2] An "action brought by a person under this section," *i.e.*, section 30, refers to a qui tam action brought by a relator on the City's behalf; *see* § 30(b)(1) (permitting actions by private persons to enforce the FCO).

[3] Again, this refers to a qui tam action brought by a private person for himself and the government. 31 U.S.C. § 3730(b)(1).

> proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation."

31 U.S.C. § 3730(d)(1). Both provisions are entitled "*Award to qui tam plaintiff.*" Of course Mr. Rosenberg is not a *qui tam* plaintiff because he was jurisdictionally barred. But that point has been made.

Rosenberg's thin statutory-interpretation argument, as the Court understands it, is that, even he is not the original source, and thus not a "party" or the "relator," he remains the "person" who brought the action under the FCO, and therefore he can still recover simply based on having filed the complaint.[4] But *Rockwell* forecloses that argument. The lawsuit is treated as though the "person" who brought it is the City of Chicago (as was the Attorney General, in *Rockwell*) because Rosenberg was jurisdictionally barred from asserting a claim on the City's behalf.

By the logic of Rosenberg's argument, *any* person could file a sham, uninformed complaint, later be dumped as the relator, and yet be entitled to seek a portion of any recovery obtained in the suit by virtue of having brought the lawsuit. That is not the law. Even the sole authority that Rosenberg relies upon begins by stating the proposition that the zero-to-ten percent recovery ("Level 2") may be obtained "*only if* the relator possessed 'direct and independent knowledge of the information' upon which the suit was based." *Alderson v. United States*, 718 F. Supp. 2d 1186, 1189 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 (9th Cir. 2012) (citing 31 U.S.C. § 3730(d)(1), (e)(4) and cases) (emphasis added). In other words, "*only if*" the original-source exception to the public-disclosure bar applies can the ex-relator collect.[5] Other cases support this view. For example, the FCA's first-to-file rule will not bar a second lawsuit on the same false claims if the first is dismissed for lack of jurisdiction. *Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 825 (9th Cir. 2005) ("[W]e hold that in a public disclosure case, the first-to-file rule of § 3730(b)(5) bars only subsequent complaints filed after a complaint that fulfills the jurisdictional prerequisites of § 3730(e)(4)."). This reinforces the premise that the jurisdictional dismissal erases the relator not only from later proceedings but from everything that came before.

---

[4] Rosenberg has wisely abandoned the argument he advanced orally in court to the effect that the FCO differentiates between "a person bringing the action" and the person "initiating" the action. See 2/9 Tr. at 4:8-10, ECF No. 100 ("The Court has talked about bringing the lawsuit. The ordinance actually says person initiating the lawsuit."). There is no such distinction between the FCA and the FCO, or within the relator compensation provisions of either statute. They speak only of the person "bringing" the action. And if Rosenberg does not qualify as "the person bringing the action" because he was jurisdictionally barred from asserting the claims, that disqualification applies equally to both subsections of § 1-22-30(d)(1) of the FCO.

[5] Rosenberg's reliance on *Alderson* in support of his argument is utterly misplaced and, because it is the only authority he cites, telling. Apart from the fact that its overview of the FCA's compensation scheme for relators is *dicta*, that overview confirms that the FCA "provides three levels of recovery **to the relator.**" 718 F. Supp. 2d at 1190 (emphasis added). Yes, awards to the relator are predicated on the information and services the relator provides, but that proposition helps Rosenberg not at all because to qualify for such an award, one must be a relator. Rosenberg, jurisdictionally barred from bringing the claims asserted in his complaint, was not a relator so the statute authorizes no award. Nothing in *Alderson* suggests otherwise.

Closely on point is the Third Circuit's decision in *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 98 (3d Cir. 2000) (Alito, J.), in which the court addressed the argument that because of the public-disclosure bar, "the District Court lacked subject matter jurisdiction over the relators' automated chemistry claims; [and] therefore, the Court could not award them any recovery." *Id.* at 102. Pre-*Rockwell*, the court grounded its decision in straightforward statutory interpretation, rather than attaching dispositive weight to the "jurisdictional" nature of the public-disclosure bar. The court asked simply "whether the *qui tam* statute authorizes an award when a relator asserts a claim that is subject to dismissal under § 3730(e)(4) but the government intervenes before the claim is dismissed." *Id.* at 103. Its answer was "no." It addressed the language at issue here as to the "Level 2" recovery and held that it applied only in "the (presumably unusual) cases in which an 'original source' relator asserts a claim that is 'primarily based' on information that has been publicly disclosed and that the relator did not provide." *Id.* at 105. In other words, to recover under this provision, the "person" needs to be an original source. Therefore the appellate court ordered, on remand, that "if the District Court determines that the relators were not original sources of information with respect to those claims, *it may not award them any share of the proceeds attributable to them*." *Id.* at 108 (emphasis added). And of course the proposition makes sense: a relator who filed suit based on publicly disclosed information and was not the original source of his allegations has not provided a public service. By definition, he has earned no "bounty" (in the language of *Alderson*) by providing information of significant value.

As a further basis for denying the motion for a share of the proceeds, this Court emphasizes that the Level 2 award is wholly discretionary under the FCO: "[T]he court *may* award such sums as it considers appropriate" considering "the significance of the information and the role of the person bringing the action in advancing the case to litigation."[6] As explained in detail in the ruling that applied the public-disclosure bar and rejected the original-source exception, Rosenberg did not provide significant information that supported this lawsuit. He is seeking a windfall: completely disproportionate compensation—*millions*[7]—for drafting and filing a summary of information about which the City was already aware. Nor does post-complaint assistance merit an award. After Rosenberg filed his complaint in Cook County, the City, which had been actively investigating and had previously interviewed Rosenberg as part of its investigation, took over. Redflex had not been served at the time, and as far as this Court can determine, nothing had taken place in the litigation before the City intervened and the complaint was unsealed. Rosenberg does not claim involvement in preparing the much-expanded amended complaint of December 14, 2015, the operative pleading in this case.

And because this would be (if Rosenberg's arguments had any merit) a discretionary decision, it is also appropriate to consider Mr. Rosenberg's "role" in this case. By his own admission, he participated in Redflex's bribery scheme and lied about it for years. He received

---

[6] Rosenberg's motion maintains, wrongly, that payment of a Level 2 award is mandatory, not discretionary. Mot. 2 ("FCO mandates payment in that range"); 4 (Level 2 contributor "is *still* entitled to up to 10%") (emphasis in original), ECF No. 86.

[7] Ten percent of a $20 million settlement would be $2 million, which doesn't count the attorneys' fees Rosenberg is also seeking.

immunity from federal criminal prosecution based upon his cooperation with the investigation once it was underway. He now wants a "bounty" for attempting to enforce, on behalf of the citizens of Chicago from whom he stole, the statute prohibiting the very fraud he perpetuated. To be sure, the insider-whistleblowers who become *qui tam* plaintiffs are often erstwhile participants in the underlying fraud, just as cooperators in criminal cases who receive immunity are not saints. And if they help catch the other malfeasors or recoup the government's losses based on information that had not already been publicly disclosed, they are entitled to their due. But Rosenberg did not provide the essential information upon which this FCO case is based, and it is entirely appropriate for the Court to consider whether Rosenberg's role in the crimes he claims to have exposed should preclude, in part or whole, an "award" under the statute were one permitted. Indeed, the FCO expressly contemplates that any award otherwise appropriate under the statute may be reduced to the extent that the relator "planned, initiated or participated in the violation . . . upon which the action was brought." FCO,§ 30(d)(4). Therefore, it is bold indeed for Rosenberg to seek the maximum discretionary amount this Court may award under the FCO, even if it had jurisdiction to award it.

**B. Attorneys' Fees**

Mr. Rosenberg argues that his lawyers are entitled to fees under the FCO, and if not, under a theory of *quantum meruit*. This Court has jurisdiction over the question of fee disputes closely related to the underlying litigation. *See Elusta v. City of Chicago*, 696 F.3d 690, 694 (7th Cir. 2012).

Rosenberg's first argument for fees is based on § 30(d)(3) of the FCO, which provides that "any person" entitled to a share of proceeds under § 30(d)(1) "shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." That argument is easily disposed of because Rosenberg is not owed a share in the proceeds. This has nothing to do with whether he is viewed a "party" or "person," to the extent that Rosenberg continues to imagine a material distinction, *see* Mem. 8, ECF No. 86. He admits that his argument is contingent on whether he "falls within Level 2 Recovery," *id*., and so it fails. This Court need not look to the reasonableness of the fees requested.

The alternative argument on a *quantum meruit* theory is baseless. *Quantum meruit* means what is equitably deserved based on services rendered in a quasi-contractual relationship. *Dobbs v. DePuy Orthopedics, Inc*., 842 F.3d 1045, 1049 (7th Cir. 2016) (citation omitted). Under Illinois law, to achieve a *quantum meruit* recovery against the City, Rosenberg's attorneys must prove that: (1) they performed a service to benefit City, (2) they did not provide this service gratuitously, (3) the City accepted this service, and (4) no contract existed to prescribe payment for the service. *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 402 Ill. App. 3d 961, 979, 931 N.E.2d 810, 825–26 (2010) (citations and quotation marks omitted). There is no attempt here to demonstrate that these elements are met, and Rosenberg's argument is not supported by any authority suggesting that the theory is applicable in this context.

To the extent Rosenberg's argument is premised on the time and effort expended by Mr. Rosenberg himself—*e.g.*, Rosenberg "traveled from California to Chicago twice" and "met for hours with the City identifying key documents and explaining Redflex's corrupt system in

painstaking detail," Mem. 10, ECF No. 86—it is frivolous. Rosenberg cannot get "attorneys' fees" for his own time, and it is further noted that some of Rosenberg's "painstaking" account of the corruption was in relation to the criminal investigation. Further, that the City "welcomed" help from Rosenberg and his lawyers is hardly the standard for recovery in *quantum meruit*, and Rosenberg's suggestion to the contrary is equally frivolous. It is not the same thing as establishing that Rosenberg's counsel rendered legal services to the City for which the City owes them payment.

Finally, Rosenberg says that if his attorneys are not compensated, the City will be unjustly enriched. This argument is hopelessly underdeveloped; Rosenberg fails to explain how the City would be retaining "unintended largess" at the expense of Rosenberg's lawyers. In any case, *quantum meruit* and unjust enrichment are distinct theories. The elements set forth above are not met here. First, there is no evidence that Rosenberg's lawyers provided services "to benefit the City"; they acted for their client, and themselves (which is as it should be); that they had a mutuality of interest does not mean that Rosenberg's lawyers were providing services on the City's behalf. Second, there is no evidence that the City ever "accepted" services from Rosenberg's lawyers—it had plenty of its own and, rather than leave the case to Rosenberg's lawyers to litigate on the City's behalf, the City intervened and prosecuted the case itself. Third, there is no quasi-contract here; that is, some relationship that constituted an implied promise by the City to pay Rosenberg's lawyers.[8] In contrast to the run-of-the-mill *quantum meruit* case in which lawyer and client sever ties and the lawyer later seeks to recover for her contribution to the success of a lawsuit, there was no attorney-client relationship between the City and Rosenberg's lawyers. The City and Rosenberg have always maintained separate counsel. Rosenberg has not supported in any way the novel theory of obtaining fees from a non-client absent a statutory fee-shifting provision or a contract. *Quantum meruit* does not mean "a bill for services rendered to our client that may have helped yours, too."

Finally, it bears noting that there is an actual contract in play here: the terms of engagement between Rosenberg and his lawyers. He is the only person from whom the lawyers could obtain fees. If that fee is zero, because there was contingency-fee arrangement and Rosenberg was dismissed from this case, that is the nature of the beast. Lawyers working for contingency fee *always* put their own money on the line with no guarantee of payment. They cannot, however, hedge that risk by going after strangers to the fee agreement in search of compensation if their own client's claim fails.

\*     \*     \*

Rosenberg is not awarded any share of the settlement proceeds, and his attorneys may recoup no fees from the other parties to this litigation. His motion is denied.

---

[8] This includes the Common Services agreement, which is simply a standard cooperation and information sharing agreement arranged at arms' length between two parties with overlapping interests in the lawsuit. It says nothing, and implies nothing, about fee-sharing for the lawyers.

Dated: April 27, 2017

John J. Tharp, Jr.
United States District Judge

8